Relator instituted this mandamus proceeding seeking to have the Commission Council of the City of Alexandria, Louisiana, ordered to pay him his salary as Chief of Police for the period of time he was illegally suspended from performing his duties as such. Relator was appointed Chief of Police of the City of Alexandria in May, 1937, at a salary of $275 per month. He continued to serve until June 26, 1941, when he was removed by the City Council and charges preferred against him. The Legislature of 1940 passed Act 253, known as the Fire and Police Department Civil Service Act. Under said Act the Alexandria *Page 27 
Civil Service Commission was organized and under it relator became a permanent employee subject to removal only for causes enumerated by said Act.
The municipal elections in the spring of 1941 resulted in a change in the offices of Mayor and Commissioner of Utilities. Upon the induction of these two new officers into office or soon thereafter the Mayor called upon relator to resign. He refused and on June 26, 1941, was removed by a vote of the Commission Council. Relator availed himself of the provisions of Act 253 of 1940 and demanded a hearing on the charges preferred by the City Council. The Civil Service Commission sustained the action of the City Council. Relator then appealed to the District Court where after hearing had the action of the City Council and the Civil Service Commission was reversed and annulled and relator ordered reinstated as Chief of Police of the City of Alexandria. A writ of certiorari was applied for to the Supreme Court of the State and the writ was denied on November 3, 1941. Relator resumed his office as Chief of Police on November 6, 1941.
Immediately after relator was removed from office, the City Council appointed a new Chief of Police. On November 5, 1941, after the Supreme Court had denied a writ in the case, the acting Chief of Police was made by the acts of the City Council the Director of Safety and placed in charge of the Police Department. He took charge of the office formerly used by the Chief of Police and gave all orders to the police and other employees. Relator was then only Chief of Police in name with few if any duties to perform. He had been deprived of all modes of transportation and was also refused payment of his salary during the time of his illegal suspension, that is, from June 26, 1941.
On or about the time the office of Director of Safety was created and after the courts had ordered relator reinstated, the City Council passed an ordinance reducing the salary of the Chief of Police from $275 per month to $155. This ordinance was never put into effect and since November 6, 1941, to date of trial relator has been paid $275 per month, the same salary he received prior to his illegal removal. Since the City Council did not reduce the salary of the Chief of Police until a day before relator again took over the duties of that office on November 6, 1941, it is certain that if he is entitled to the salary from June 26 to November 6, 1941, it is at the rate of $275 per month.
When relator was refused his salary during the time of his illegal suspension and found all his former duties had been assigned to another officer, his car taken away from him and his office space occupied by the Director of Safety, he applied to the Civil Service Commission to be restored to the duties of the office and for the payment of the salary refused him by the City Council. After hearing had the Civil Service Commission issued the following order:
"The petition of George C. Gray, filed November 13, 1941, and the answer thereto of the Commission Council of the City of Alexandria having been considered, after hearing and evidence adduced, —
"It is ordered:
"1. That the Commission Council of the City of Alexandria, Louisiana, restore George C. Gray to his position as Chief of Police of the City of Alexandria, Louisiana, with all the duties and powers attendant and pertinent to said Office.
"2. That the salary of the said George C. Gray as Chief of Police be restored to the sum of $275.00 a month, to take effect as of November 6, 1941.
"3. That the Commission Council of the City of Alexandria is ordered to pay forthwith to the said George C. Gray, his back salary at the rate of $275.00 per month from June 26, 1941 to November 6, 1941.
"This signed at Alexandria, Louisiana, on the 9th day of January, 1942.
"Fire Police Department
"Civil Service Commission."
The City Council, not having the right of an appeal, took no further action, in fact it acquiesced in the order of the Civil Service Commission in all respects except the payment of relator's salary during the period of his suspension. The City Council, having refused to obey the order of the Civil Service Commission in this respect, relator filed the present proceeding praying that the City Council be ordered to pay him the salary in accordance with the decision of the Civil Service Commission and, in the alternative, he prayed that if the courts should find he was not entitled to a writ of mandamus, he have judgment against the City for the sum of $275 per month from June 26 to November 6, 1941, *Page 28 
with legal interest from judicial demand. In said petition he alleged the facts above set forth.
Respondents excepted to the summary proceeding by rule on the ground there was no legal authority for the issuance of a writ of mandamus in this case; that relator had an adequate remedy by ordinary process. Reserving their rights under this exception respondents filed exceptions of no cause and no right of action. Reserving their rights under all exceptions respondents filed their answer in which they deny the right of the Civil Service Commission to fix the salary of relator and to order the Council to pay him his back salary. They further allege that during the time relator was suspended he worked elsewhere and received in salary several hundred dollars for which the City is entitled to have credit if ordered to pay back salary.
They further alleged that relator at no time in the removal proceedings before the Civil Service Commission or the District Court claimed any back salary and no right was reserved to him to claim it later and therefore he cannot at this late day make such a claim. Finally respondents averred that even if relator is entitled to recover anything, he is not entitled to a writ of mandamus for the reason the budget for the current year has been made up and approved and does not contain any provision for the payment of relator's claim and the City Council would not be legally authorized to make such payment. That all the revenues of the City presently being received have been pledged to secure a loan from the banks of Alexandria and respondents could not obey a writ of mandamus without violating contracts already made and there is no surplus in the City treasury with which to pay relator's claim.
The exceptions were referred to the merits and finally overruled by the lower court. Judgment was rendered in relator's favor making the alternative writs of mandamus peremptory and ordering the City of Alexandria through its Mayor and Commissioners to pay to relator his salary as Chief of Police at the rate of $275 per month from June 26th to November 6, 1941, said amount to be paid out of the funds budgeted for payment of the Police Department or out of funds coming into the general funds and not already budgeted. From that decision respondents have perfected and are now prosecuting this appeal.
We will first discuss the authority of the Civil Service Commission to fix the salary of relator and to order respondents to pay him his back salary for the time he was illegally kept out of office. On the determination of these issues to a great extent hinges the right of relator to a writ of mandamus. However, in this case it is not necessary to pass on the right of the Commission to fix the salary of relator, his present salary is not involved. He is only claiming here the salary for the period between June 26 and November 6, 1941. The City Council prior to June 6, 1941, had by ordinance fixed relator's salary at $275 per month. There was no reduction made or attempted to be made until November 5, 1941, the day before he resumed his duties. It was therefore unnecessary for the Commission to fix his salary during the period for which he is claiming salary in this suit, it was fixed by the City Council.
The authority for the Commission to order relator's salary for the period he was under suspension paid by respondents is found in Section 14 of Act 253 of 1940. It is as follows:
"* * * After such investigation, the Commission may, if in its estimation the evidence is conclusive, affirm the removal, or if it shall find the removal, suspension or demotion was made for political or religious reasons, or was not made in good faith for cause, shall order the immediate reinstatement or reemployment of such person in the office, place, position or employment from which such person was removed, suspended, demoted or discharged, which reinstatement shall, if the Commission so provides in its discretion, be retroactive, and entitles such person to pay or compensation from the time of such removal, suspension, demotion or discharge. * * *"
Furthermore, in the same Section of said Act it provides:
"* * * The findings of the Commission shall be certified, in writing to the appointing power, and shall forthwith be enforced by such officer."
Respondents are not granted the right of appeal from the rulings or decisions of the Commission, therefore, when the Mayor under authority of the first above quoted provision of Section 14 of Act 253 of 1940, ordered relator's claim paid, it became the ministerial duty of respondents under the last above quoted *Page 29 
provision of the same Section of the Act to pay him in accordance with the decision of the Commission. The law is so well established that a writ of mandamus will issue to force the performance of a ministerial duty by an officer or officers of a municipality that it requires no citation of authority to support it. It therefore follows that the lower court was correct in overruling the exceptions filed by respondents to relator's proceeding by summary process.
The exceptions of no cause and no right of action are based on the assumption that the relator was not authorized by law to proceed summarily as he did. We have disposed of that question in determining the first exception.
Respondents also contend that these exceptions should be sustained for the reason relator did not allege his salary had been fixed by the City Council at $275 per month and did not allege there were sufficient unpledged funds in the treasury with which to pay his claim. In Article 5 of the petition relator alleged: "That immediately following the denial of writs by the Supreme Court as above set forth and on about the 5th day of November, 1941, the said Commission Council arbitrarily and unreasonably fixed the salary of the Chief of Police at the paltry sum of $155.00 per month whereas prior thereto it had been $275.00 per month." This allegation is sufficient to answer the first question raised by respondents.
The second question, that is, relator did not allege there were sufficient unpledged funds in the City treasury to pay his claim, is purely and simply a matter of defense and it was unnecessary for relator to so allege to set forth a cause and right of action. There is no merit to the contention that relator was required to allege his claim had been placed on the annual budget.
These two exceptions were correctly overruled by the lower court.
The oral evidence offered on trial of the case was meager, consisting only of the testimony of relator and the Secretary-Treasurer of the City.
Respondents' contention that because relator did not ask to have his back salary paid in the proceeding involving his removal from office that he waived it is without merit. The City Council removed him without a hearing. The Commission, after a hearing, sustained the City Council in its act and it was on appeal from the Commission's decision when the District Court ordered him reinstated. Under Section 14 of Act 253 of 1940, the Civil Service Commission was the only body that could authorize the payment of his back salary and it was entirely in the discretion of that body as to whether it would order it paid or not. The only power granted them under the Act was to hold a hearing on the charges preferred and unless their decision was in favor of relator they were powerless to grant him any salary. Their decision was against him sustaining the City Council in removing him.
Relator was under no circumstances entitled to any salary until he had first been reinstated and not then unless the Commission in its decision decided he was entitled to it. Therefore any demands for back salary made by relator before he was reinstated would have been premature. As soon as he was reinstated by the Court, not the Commission, he made demand for the salary he had been deprived of and when refused payment of the same by the City he applied to the Commission, the only body authorized to order it paid, for relief which relief it granted.
This case is not comparable to a case where plaintiff sues for less than is due him and later enters suit for the remainder. Respondents' contention that the City is entitled to a credit against the salary it owes relator in the amount he earned on other jobs during the period he was illegally prevented from exercising the duties of Chief of Police is entirely without merit. Respondents could and would have had the full time service of relator as Chief of Police during that time if it had not been for their illegal act in removing him from office. Relator was not a chattel or slave of respondents and his earnings at a time when they had deprived him of the right to serve them cannot be considered the property of respondents. He was ready and willing at all times to perform the duties of the office he was justly entitled to.
The only serious defense is that respondents are without funds to comply with a writ of mandamus ordering them to pay relator his claim. This would be a perfect defense if the evidence sustained it. Respondents offered in evidence a copy of the budget for the fiscal year May 1, 1941, to April 30, 1942. It shows appropriations for the General Fund $85,090 *Page 30 
and for Public Safety $223,000. These amounts are not broken down and there is no evidence offered to show said amounts have been expended by the City. The judgment of the lower court ordered relator paid out of the funds budgeted for the Police Department (Public Safety) or out of any funds in or coming into the General Fund not already budgeted. It was incumbent upon respondents to show there were no such funds available to comply with the writ of mandamus and they have failed to do so.
Respondents further rely upon a resolution offered in evidence of date January 5, 1942, to sustain this defense. The resolution authorized the City to borrow $180,000 from the banks at Alexandria in order that it might have funds to meet its current expenses, salaries of officers, employees, etc. The General Fund on the budget shows revenues amounting to $634,290 and total revenues from all sources amounting to $2,526,890. Section 3 of the resolution authorizing the borrowing of $180,000 provides as follows:
"Be It Further Resolved, etc., that the payment of each of said certificates with interest, attorney's fees and costs of collection shall be and it is hereby declared to be a fixed charge upon all taxes, income and revenues of every kind except special taxes for the retirement of the bond issues of the City of Alexandria, Louisiana, for the fiscal year 1941-42 and for the fiscal year 1942-43, and all such revenue is hereby dedicated, pledged and set aside for the payment in full of said certificates and there shall, for the further and additional security of payment thereof without prejudice to any other right of the holders of said certificates, be deposited in a special bank account, upon which there shall be no interest payable, as a sinking fund for retirement of said certificates of indebtedness, the sum of $10,000.00 each calendar month commencing with the month of January, 1942, out of the revenues collected from the Natural Gas Distribution System and Electric Lights and Water Works System of the City of Alexandria, Louisiana, until payment thereof in full, which said sums shall be used for no other purpose than the retirement of said certificates and in the event there be any failure to make any such deposit in said sinking fund or if any part thereof be used for any other purpose, at the option of the holders of said certificates the same shall become immediately due and exigible and the holders thereof shall have the same rights as to enforcement of collection thereof as if they had matured by the lapse of time."
It is clear, to our minds, under the above provisions, that so long as the City deposited monthly the $10,000 out of the revenues collected from the Natural Gas Distribution System and the Electric Light and Water Works System it could use for the purpose of operating the City government the other revenues collected, but upon failure to make the $10,000 monthly, it would subject all the revenues or as much as necessary of them to pay the balance due on the loan to be levied upon by the banks. It does not mean that the total revenues of the City, amounting to more than two and one-half million dollars, should be held intact and not used for any purpose until the full $180,000 was paid. Furthermore, it is not shown that the $180,000 borrowed had been expended or which fund it was placed in.
The record also shows that the greater part of the $180,000 borrowed by the City had been repaid at the time of trial below.
The Secretary-Treasurer, the only witness offered by respondents, was asked the following questions:
"Q. Is it your testimony here that the City of Alexandria could not pay an amount of approximately $1150.00 if ordered to do so by the Court? And he answered: "I would not make that statement.
"Q. You would not say? A. No, Sir."
This witness was in a better position to know the financial affairs of the City than anyone else and certainly his testimony does not sustain the defense that the City has no funds in the treasury with which to comply with a writ of mandamus ordering it to pay relator his salary. The burden of proof was on respondents to sustain this defense and in our opinion they have failed to meet it.
We are convinced the judgment of the lower court is correct and it is affirmed with costs.
In this court appellee has answered the appeal praying for damages for frivolous appeal. The issues in this case are not such as to justify us in awarding such damages. We are not convinced the appeal was taken for delay. *Page 31