This is a mandamus proceeding filed on June 30th, 1948 by C. F. Averill and John B. Smullin, former employees of the Department of Revenue of Louisiana, to compel W. A. Cooper, Collector of Revenue to pay them certain sums of money they claim to be due them for annual leave, and to compel J. H. Rester, Commissioner of Administration of Louisiana to enforce payment of their respective claims or show cause to the contrary. Averill and Smullin allege that as former employees of the Department of Revenue of the State of Louisiana at the date of their termination they were due for accumulated leave to the former $1,392.19 and to the latter $1,550.00; that under and by virtue of Sections 29 and 30 of Act No. 172 of the Louisiana Legislature of 1940 which authorized and directed the Director of Civil Service of the State of Louisiana, with the approval of the Civil Service Board to prepare and put into effect rules and regulations pertaining to and governing employment under the Classified Service and particularly rules and regulations pertaining to and providing for annual leave and pay therefor, and in compliance with this authority from the Legislature the Department of Civil Service put into effect Rule 11 "which provided that upon the resignation or termination of employment of an employee who has occupied a position for at least six months, all annual leave accrued to his credit shall be computed and the value thereof shall be paid to him in a lump sum or in installments on successive payroll periods at the discretion of the appointing authority." They further allege that prior to June 27, 1948 W. A. Cooper, the Collector of Revenue, was charged with the duty of preparing commitment vouchers or pay-rolls, including pay for accumulated annual leave and transmitting the vouchers or pay-rolls to the Director of Finance, James S. Reily, who was charged with the duty of approving the pay-rolls of the various state departments and of preparing and transmitting same to the Treasurer for the purpose of payment; that the Collector of Revenue was authorized by law and so elected to have relators paid the amount due them for accumulated annual leave in installments on successive pay-roll periods and transmitted to the Director of Finance a commitment for the payment of installments falling due on May 31, 1948, but that he has failed or refused to submit such commitments for the succeeding pay-roll periods; that James S. Reily, the then Director of Finance, refused and failed to prepare warrants and to transmit them to the Treasurer for the purpose of paying the relators the installment due on May 31, 1948 and such constituted failure and refusal to perform their ministerial duties as prescribed by law.
It is further alleged by relators that House Bill 806 of the Louisiana Legislature of 1948 became law on June 27, 1948, and by its own provisions became operative on July 1, 1948, and by the terms of said Act the functions heretofore performed by the Director of Finance and particularly those pertaining to the payment of employees including pay for accumulated annual leave were transferred to W. A. Cooper, Director of Revenue, and he would, therefore, be charged with the duty of paying the employees of that Department directly, including the payment of accumulated annual leave to the relators; that under the terms of House Bill 806, Act No. 133 of 1948, it was provided "that this repeal shall not affect any right, contractual or otherwise, of the State of Louisiana or any person or corporation acquired under the laws hereby repealed, and the enforcement of such rights and the liquidation of the affairs of the Department of Finance are transferred to the Division of Administration"; that James S. Reily (now J. H. Rester) had been duly appointed and qualified as Commissioner of Administration of the State of Louisiana *Page 165 
in conformity with said House Bill and was, therefore, charged with the duties of enforcing the rights of individuals based on claims against the State, including relators' claims; That W. A. Cooper, Collector of Revenue refused to pay the relators for accumulated annual leave, and James S. Reily (now J. H. Rester) refused to enforce the payment of their claims under the authority vested in them respectively, and under their ministerial duties as provided by law; that "there are adequate funds, duly appropriated by the Louisiana Legislature, by the General Appropriations Act (Act 66 of 1946) for the maintenance and operating expenses of the Department of Revenue for the biennium 1946-47 — 1947-48, and that, in addition thereto, appropriations have been made by the Louisiana Legislature for the maintenance and operation of the said Department of Revenue of the form of withholds provided by the various taxing statutes of the State, and that petitioners are legally entitled to payment of their claims in full out of said appropriated funds."
Relators therefore prayed that an alternative writ of mandamus issue, directed to W. A. Cooper, Collector of Revenue of the State of Louisiana, ordering him to pay forthwith and in a lump sum to the relators the amount due on the date of the filing of the suit and to continue thereafter payments in installments on successive payroll periods of the Department of Revenue until the respective balances due them have been fully paid, and to withhold a sufficient amount of appropriated funds credited to the Department of Revenue for the purpose of making said payments in full, or to show cause to the contrary at such a date and at such an hour as the Court might dictate.
On June 30, 1948, Honorable Charles J. Holcombe, Judge of the Nineteenth Judicial District Court, ordered that alternative writs of mandamus issue as prayed for and according to law, returnable on July 6, 1948 at 10 o'clock A.M. In pursuance to this order of the Court, the Collector of Revenue was commanded to pay forthwith and in a lump sum in accordance with the prayer of the petition and to continue thereafter payments in installments as prayed for, or to withhold a sufficient amount of appropriated funds credited to the Department of Revenue for the purpose of making said payments in full, or that he show cause why the same should not be done on the return day above mentioned. An alternative writ of mandamus was also issued and served upon James S. Reily, Commissioner of Administration of the State of Louisiana, commanding him to enforce payment of relators' claims or to show cause why the same should not be done on the return date.
The defendants through their counsel filed (1) Exception to the jurisdiction of the Court Ratione Personæ because the suit was one against the State; (2) an exception to the jurisdiction of the Court Ratione Materiæ (3) Misjoinder; (4) Non-joinder; (5) no right or cause of action, and, reserving all rights under their exceptions filed an answer denying that relators were entitled to judgment as prayed for.
The District Court orally overruled all of the above exceptions except the exception of no right of action or no cause of action, which were referred to the merits. It is unnecessary to review the Court's action in overruling the exceptions as they are not being urged on appeal, and we only have before us the ruling of the Court on the exception of no cause or right of action which, after the trial on the merits was sustained by the trial judge with written reasons.
From the judgment sustaining the exceptions of no cause and no right of action, and dismissing the suit, the relators have appealed.
The main reason for the ruling of the trial court is set forth in the following excerpt from his written reasons for judgment:
"Under Act 111 of 1942 the control of all monies appropriated to the Department of Revenue for whatever purpose, was placed with the Collector of Revenue, the *Page 166 
Director of Finance, the State Controller and the Treasurer."
"The Collector of Revenue is prohibited from drawing a warrant against any money appropriated to the Department of Revenue."
"I assume that relators desire to be paid from funds appropriated by Act 66 of 1946. If this be true, it seems to me that under Act 111 of 1942, already referred to such payment could not be made by the Collector of Revenue. This would not only not be his duty, he is expressly prohibited from doing so. Therefore a petition setting forth that the Collector is charged with the ministerial duty of making payment of claim of the character here asserted and praying that he be required to do so, in my opinion, fails to disclose either a cause or right of action for mandamus."
"Aside from this, the evidence shows that the balance of funds appropriated to the Revenue Department have actually been transferred to the State Treasury."
"Obviously, if an order issued to the Collector of Revenue to pay the two claims asserted here, he would be powerless to comply with the same."
"The fact that the petition herein filed was served before the alleged transfer, if that be a fact, does not make it any less impossible for the two defendants to pay or to enforce the payment of relators respective claims." (Emphasis District Court's.)
Relators stated in their brief in answer to the reasons above quoted from the Trial Court:
"However, the Fiscal Code was repealed by Act 133 of 1948, which became law, as emergency legislation, on the very day on which the present suit was filed and preliminary writs of mandamus were issued. Consequently, the writs were issued against officials who were authorized to make payments under the new act. Act 133 (of 1948) eliminated the necessity for the participation of three officials in making disbursements, and authorized and directed the Collector of Revenue to pay claims directly on his own warrants."
"In addition to repealing the Fiscal Code, Act 133 of 1948 created the Department of Administration, with the Commissioner of Administration as its head. The right of persons having claims against the State were specifically preserved by the new act and the Commissioner was required to enforce such claims. Thus, after Act 133 became law mandamus proceedings could only be directed against the Collector of Revenue in his newly created capacity and against the Commissioner of Administration, since they were the officials then charged with the responsibility of paying claims such as respondents."
"The above facts were fully set out on relators petition and were included in their brief in the lower Court. Preliminary writs of mandamus against the new officials were ordered by the Court. Yet the lower Court based its decision on the assumption that relators were asking that their claims be paid in accordance with the provisions of the Fiscal Code, which, in fact, had already been repealed. We quote from the decision of the Lower Court:" (See reasons of Trial Court above quoted.)
"We believe that the above remarks by the Court clearly indicate that the Court did not correctly construe relators claim. Of course, the fact that the Collector of Revenue lacked authority to pay and was prohibited from paying such claims under the Fiscal Code has no bearing on this case. It is his duty under the new act which relators are seeking performance of — certainly not his duties as provided by an act which had been repealed at the time relators suit was filed."
It appears to us that the learned Judge of the District Court was in error in sustaining the exception of no cause or right of action, for the relators alleged that the amounts which they claim are due them under and by virtue of the Civil Service Act, No. 172 of 1940, and prior to the repeal of the Fiscal Code, Act No. 111 of 1942, the method of payment of such claims at the time the relators services were discontinued was provided by the Fiscal Code, under which three state officials were required to participate in the process of *Page 167 
disbursing funds, viz., Collector of Revenue prepared the requisition for payment, forwarded it to the Finance Department where, if found to be in order, checks or vouchers were prepared and signed by the Director of Finance, and then transmitted to the State Treasurer who signed and issued them to State Employees. Then, relators allege that the Fiscal Code was repealed by House Bill 806, which is Act No. 133 of 1948, and that under the terms of this act the Collector of Revenue was authorized to make payments of claims such as relators; and that, also, under Act No. 133 of 1948, the Commissioner of Administration was required to enforce the claims of the relators. Therefore, under the allegations of relators' petition, Act No. 111 of 1942 passed out of the picture, and, if we take as true the main allegations upon which he have commented, the petition does set forth a right and cause of action. We do agree with the trial Judge that the relators desired to be paid from funds appropriated by Act No. 66 of 1946, as such is set forth in their petition and also in their prayer "to withhold a sufficient amount of appropriated funds
credited to the Department of Revenue for the purpose of making said payments in full, or to show cause to the contrary * * *." (Emphasis ours)
In order to maintain a writ of mandamus, it must be established that funds are available with which to pay the claim. The facts proven in the hearing of this case show that until July 1, 1948, all operating accounts of the Department of Revenue were under the control and supervision of the Department of Finance under the provision of Act No. 111 of 1942, and on July 1st, 1948, the Division of Administration having been created by Act No. 133 of 1948, that James S. Reily was Commissioner of Administration from July 1st, 1948 to September, 1948 when he was succeeded by J. H. Rester who was substituted as a party-defendant. It was further shown that the balance of the account in the Department of Finance as of the close of business June 30, 1948 for the credit of the Department of Revenue was the sum of $480,581.42, which amount was paid into the State Treasury by check on the 15th day of October, 1948, and same was cashed on the 9th day of November, 1948. This balance included all revenue to the credit of the Department of Revenue including the surplus from the regular appropriation under Act No. 66 of 1946, from which appropriation relators are asking that they be paid, and also included withholds permitted by various revenue producing acts of the Legislature. It was further shown that all encumbered balances have been paid to the Department of Revenue of which there were two, one in the amount of $1,369.59 to pay for supplies of the Department of Revenue, and the other in the amount of $4,329.62 to pay encumbered pay-rolls, and that relators' accumulated annual leave was included in this encumbered balance in the amount of $250.00 each, which was paid by the Department of Revenue to relators on the second day of September, 1948.
It was further shown that the bank account, due to a small outstanding check, was not closed until January 25, 1949.
There is no doubt from the testimony that on April 21, 1949, the date of the trial, there were no funds at all from which the payment of relators' claims could be made. Relators contend that the transfer of these funds was illegal as the respondents had full notice of and had been served with the alternative writs of mandamus on the first day of July, 1948. We cannot see any merit in this contention, for there was nothing in the order of the Court prohibiting the transfer of these funds or ordering same not to be done or enjoining the transfer of the funds or a sufficient amount to cover the claims of relators and, therefore, under the terms of Act No. 66 of 1946 (the General Appropriations Act) it specifically provided that all appropriated surplus at the end of the bi-annum should be paid into the State Treasury to the account of the State General Fund. It was shown that the withholds and general appropriations had been commingled in one fund to the credit of the Department of Revenue. It is true that Section 1 of Title V of Act No. 133 of 1948 provides that withholds of the Department of Revenue are not required *Page 168 
to be paid into the Treasury, but there is no prohibition in the law against paying them into the Treasury. It will be noted that relators contend in their brief that respondents were ordered to withhold sufficient funds but it is clear that the wording of the writ directed them either to withhold sufficient funds or show cause to the contrary. Even if one would concede that the transfer of the funds was in violation of the order of the Court, an order directing the payment of relators' claims would be of no avail and the only action that the Lower Court could take would be one dealing with respondents for violating an order of the Court.
Under the facts in this case, the case of State ex rel. Ascension Red Cypress Co. v. New River Drainage Dist. et al.,148 La. 603, 87 So. 310, is on all fours with the present case. In that case, the defendants appealed from a judgment rendered in a mandamus proceeding commanding the Board of Commissioners of the Defendant Drainage District to pay a judgment held by the relators, and, if necessary, to levy a special tax for that purpose. The defense to the suit was contained in an exception of no cause of action and one of the arguments in support of the defense was:
"That plaintiff did not allege that the defendant corporation had any funds with which to pay the judgment, and that the evidence shows that the corporation has no funds on hand, nor revenues except taxes which have been funded into negotiable bonds and are dedicated to pay the bonds and the interest thereon.
* * * * * *
"With regard to appellants' first and third defenses, it is well settled that the want of funds is a complete answer to a petition for mandamus to compel the governing authorities of a political corporation to pay a judgment against the corporation, unless the corporation has authority to collect revenues with which to pay the judgment. 18 R.C.L. (p. 227) § 151. * * * As a matter of fact, the board of commissioners had no funds with which to pay the judgment, at the time the suit was tried. It appears that there were surplus funds sufficient to pay the judgment, when the suit was filed, but the funds had been expended when the suit was tried."
Also, in the case of State ex rel. Gray v. City of Alexandria et al., La. App., 12 So.2d 25, 29, in which the relator instituted a mandamus proceeding seeking to have the Commission Counsel of the City of Alexandria ordered to pay him his salary as Chief of Police for the period of time he was illegally suspended from performing his duties, the Court stated that "The only serious defense is that respondents are without funds to comply with the writ of mandamus ordering them to pay relator his claim. This would be a perfect defense if the evidence sustained it * * *."
Relators contend in their brief that these decisions are not applicable to the present case as there was no order to retain the funds when the suit was filed, no ministerial duties were violated by respondents in disposing of the funds, there had been no appropriation of the funds by the Legislature for the purpose of paying relator's claim, and the transfer was not illegal.
Alternative writs of mandamus were issued in the cases cited just as in the case at bar. In the case above cited, there were funds to pay the judgment when the suit was filed but the funds had been expended when the suit was tried. Just as in the case at bar, when the suit was filed there were funds to pay relators' claims which had been appropriated by Act 166 of 1946 but on the date of the trial these funds had been transferred to the State Treasury to the account of the State General Fund.
Relators' suit must be dismissed by reason of the fact that there were no funds available on the date of the trial to pay relators' claims, and a favorable judgment to the relators would be to no avail and a vain and useless thing.
It is therefore ordered that the judgment of the District Court sustaining the exception of no cause or right of action be reversed and that there be judgment on the merits dismissing relators' suit at their costs. *Page 169